MATTER OF RECALL OF MONTREAL MAYOR: BECKSTROM, Appellant, v. KORNSI and others, Respondents.

*No. 425. Argued April 1, 1974.—Decided May 7, 1974.*
(Also reported in 217 N. W. 2d 283.)

376

For the appellant there was a brief by *Wartman & Wartman*, attorneys, and *Robert L. Swanson* of counsel, all of Ashland, and oral argument by *Mr. Swanson*.

For the respondents the cause was submitted on the brief of *Alex J. Raineri* of Hurley.

CONNOR T. HANSEN, J. We are of the opinion that the following issues are dispositive of this appeal:

1. Whether a circuit court can determine a recall petition states good and sufficient reason for the recall of a municipal official without permitting that official to offer proof disputing the allegations contained therein?

2. Whether the affidavit of the circulators of each petition for recall was sufficient under sec. 8.15 (4) (a), Stats.?

*Truth or falsity of allegations of petition.*

As contrasted with the companion case of *Mueller v. Jensen,*[1] in the instant case the appellant did not argue in the trial court that the allegations of recall were insufficient. Instead, the appellant sought to offer proof that the allegations were untrue.

The circuit court ordered a hearing pursuant to the recall statute, sec. 9.10 (4) (a), Stats., which provides as follows:

"(4) (a) For the recall of any city official, the municipal clerk shall verify the eligibility of the respective signers and circulators, shall certify thereto and shall transmit the petition to the clerk of circuit court within 10 days of the filing date. The circuit court within 10 days after receipt of the petition shall determine by hearing whether the petition states good and sufficient reason for the recall. The clerk of circuit court shall notify the incumbent of the hearing date. The person subject to recall and the petition circulators may appear by counsel and the court may take testimony with respect to the recall petition. If the circuit court judge determines the grounds stated in the petition and proof offered at the hearing show good and sufficient reasons for recall, the judge shall issue a certificate directing the common council to hold an election under this section. If the reasons are found insufficient or do not show good cause, issuance of the certificate shall be denied. Any party aggrieved by the circuit court determination may appeal to the supreme court within 10 days following the circuit court determination by filing a notice of appeal with the clerk of the supreme court. An appeal under this section shall have preference on the supreme court calendar. The appeal shall stay enforcement of a certificate issued by the circuit court until the supreme court determines the appeal."

At the hearing, the appellant endeavored to present proof that the majority of the allegations of the petition were substantially incorrect. The court was of the opin-

---

[1] *Ante*, p. 362, 217 N. W. 2d 277.

ion that sec. 9.10 (4) (a), Stats., made the taking of testimony discretionary with the court. After ascertaining that the parties intended to offer testimony concerning the truth and falsity of the allegations, the court concluded that this ". . . is a political and not a judicial matter . . ." and refused to entertain such testimony. The court held that the petition was sufficient to warrant a recall election and, without determining the truth of the allegations of the petition, concluded that the veracity of these allegations was a matter for the electors of Montreal. The appellant contends that he should not have been precluded from offering proof that the allegations of the petitions were untrue.

The Wisconsin State Constitution provides for the recall of certain public officials. Art. XIII, sec. 12, provides in part as follows:

". . . The qualified electors of the state or of any county or of any congressional, judicial or legislative district may petition for the recall of any elective officer after the first year of the term for which he was elected, by filing a petition with the officer with whom the petition for nomination to such office in the primary election is filed, demanding the recall of such officer. . . . This article shall be self-executing and all of its provisions shall be treated as mandatory. Laws may be enacted to facilitate its operation, but no law shall be enacted to hamper, restrict or impair the right of recall."

Sec. 9.10, Stats., provides statutory guidance for the recall of public officials. Sec. 9.10 (1) and (2) (a), provide as follows:

"9.10 **Recall.** (1) The qualified electors of the state, county, congressional, judicial or legislative district, or city may petition for the recall of any elective official after the first year of the term for which he is elected by filing a petition with the same official with whom the petition for nomination to the office was filed demanding the recall of the officeholder. The petition shall be signed by electors equal to at least 25% of the vote cast for the

office of governor at the last election within the same district or territory as that of the officeholder being recalled. In cities, if at the last election any group of candidates were voted for in common to fill 2 or more offices of the same designation, the required number of petition signers shall be equal to 25% of the number computed by dividing the total vote for that office by the number of offices filled jointly.

"(2) (a) The preparation and form of the recall petition shall be governed by s. 8.15. *In addition, a recall petition for a city office shall contain a specific statement of good and sufficient reason upon which removal is sought.*" (Emphasis supplied.)

The additional requirement for the petition for recall for a city official to contain a specific statement of good and sufficient reason is constitutionally permissible in view of the fact that art. XIII, sec. 12, guaranteeing the right of qualified electors of the state, county, congressional, judicial or legislative district to recall any elective officer, does not apply to municipal officials.

It is generally recognized, as follows:

"Recall is a procedure by which an elective official may be removed at any time during his term, or after a specified time, by vote of the people at an election called for such purpose by a specified number of citizens, and the general control which the legislature has over the subject of the removal of public officers is usually considered sufficient to permit the enactment of a system for their recall. The principle underlying the recall of public officers has been defined as an effective speedy remedy to remove an official who is not giving satisfaction to the public and whom the electors do not want to remain in office, regardless of whether he is discharging his full duty to the best of his ability and as his conscience dictates. *Hence, the recall statutes do not contemplate a judicial inquiry into the truth of specific charges of misconduct, but are designed to afford relief from popular dissatisfaction with the official conduct of an officer.*" (Emphasis supplied.) 63 Am. Jur. 2d, *Public Officers and Employees,* p. 770, sec. 238.

The recall of city officials in Wisconsin is of statutory origin. Sec. 9.10 (7), Stats., provides:

"The purpose of this section is to facilitate the operation of article XIII, section 12, of the constitution *and to extend similar rights to city electors*." (Emphasis supplied.)

Art. XIII, sec. 12, does not require a determination that the petition states "good and sufficient reason" for recall. The statutory requirement in Wisconsin that the petition state sufficient reasons for recall of municipal officers is for the purpose of focusing the attention of the electors upon the specific reasons for recalling the official.

"Sec. 245. **Petition for recall—statement of grounds.**
"A proceeding for the recall of a public officer is initiated by the execution of a petition by a specified number or percentage of electors. The form and contents of such petition are usually prescribed in the provision authorizing the proceeding, and the petition for a recall must in substance conform to these requirements. Some statutes require a general statement only of the grounds on which the removal is sought, while others require that the reason or reasons for recall be stated clearly. Where the requirement is that the petition state clearly the reason or reasons for recall, it must inform the electors on that issue, and the reason or reasons assigned must be based on some act or failure to act which in the absence of justification would warrant the recall. However, where petitioners are required to state only generally their grounds or reasons for demanding a recall, the petition need not state the cause for removal with the same particularity as would be necessary in pleading in a judicial proceeding, the purpose of such statement being to furnish information to the electors upon which a political and not a legal issue may be raised at the election.
"Under a statute providing that the statement of grounds or reasons for the recall is solely for the information of the electors, it has been held that the question of the sufficiency of the grounds is a question for the electors and not for the court. But under provisions autho-

rizing a recall for malfeasance in office, the view has been taken in some cases that the sufficiency of the grounds stated is a question for the court. However, a constitutional provision that an officer shall be subject to recall whenever a petition demanding his recall has been filed, reciting that such officer has committed some act or acts of malfeasance or misfeasance while in office, or has violated his oath of office, does not contemplate a hearing of a judicial nature to determine the truth of the charges made against such officer before the question of his recall and discharge can be submitted to the people, at an election called for that purpose." 63 Am. Jur. 2d, *Public Officers and Employees,* pp. 773, 774, sec. 245.

In 4 McQuillin, *Municipal Corporations* (1968 rev. 3d ed.), p. 311, sec. 12.251, the question of removal by recall is discussed at length, and it is observed as follows:

"Sec. 12.251f.—**Judicial review.**
"In theory and in fact municipal government by recall of officers presents purely political issues to the electors. The procedure is neither a judicial, quasi, or semijudicial inquiry. The reasons for recall whether true or false do not affect the proceeding. Their truth or sufficiency is for determination by the electors alone. However, the validity of the proceedings for recall is a judicial question, and it may be permissible to determine by certiorari the sufficiency of the petition; or, provided grounds for equitable relief are established, in a suit to enjoin the holding of an election, to determine the sufficiency of proceedings leading up to the proclamation for election. And equity may determine a charge of fraud in securing signatures to the recall petition. Nevertheless the court, in passing upon the sufficiency of a demand for recall, is not permitted to inquire into the truth or falsity of the allegations in the demand, this being, as just noted, a question to be determined by the voters. Decisions holding, upon certiorari or otherwise, that particular petitions were sufficient or insufficient are indicated in the footnotes." (Sec. 12.251f, pp. 319, 320.)

In *Tolar v. Johns* (Fla. App. 1962), 147 So. 2d 196, 200, the court said:

". . . the court should not pass on the truth or falsity of the charges, as this is a matter for the electorate to determine in an election. . . ."

Subsequently, in *Gilbert v. Morrow* (Fla. App. 1973), 277 So. 2d 812, 814, it was also held that:

". . . [w]hile the trial court may not pass upon the truth or falsity of the grounds stated for removal from office, inasmuch as this is the province of the electors, still the charges must allege sufficient facts to identify to the electors the acts or failure to act without justification which are urged as misconduct in office. . . ."

The city charter in question in *Gilbert* did not specify the nature of the charges upon which recall could be sought but did require a statement of the grounds for removal.

In *Skidmore v. Fuller* (1962), 59 Wash. 2d 818, 822, 370 Pac. 2d 975, it was held as follows:

"It is admitted by the appellant that the court, in passing upon the sufficiency of a demand for recall, is not permitted to inquire into the truth or falsity of the allegations in the demand, and that this is a political question to be determined by the voters. (Citations omitted.) However, as he points out, in these same cases we have held that the legality of the proceedings for a recall election is a judicial question, and the courts may review the determination by the officer charged with the duty of preparing the synopsis of whether the charges constitute malfeasance, misfeasance, or a violation of the oath of office."

It was also argued before the Supreme Court of Appeals of West Virginia that the grounds alleged in a recall petition were untrue. (The law required a general statement of the grounds.) In *State v. Lane* (1921), 89 West Va. 744, 752, 110 S. E. 180, the court held as follows:

". . . We cannot enter upon an inquiry as to the truth or falsity of the grounds relied upon for the recall. That is a matter which must be considered by the electors when they come to cast their ballots in the recall election. . . ."

In the instant case, the trial court properly refused to conduct an evidentiary hearing concerning the truth of the allegations contained in the petition. It was also correct in holding that the petition presented facts sufficient to require the issuance of its certificate ordering a special recall election. Once the trial court has determined that the allegations of the petition are sufficient on their face to warrant a recall election, its obligation then becomes one of ruling upon the procedural regularity of the demanding recall petition. The court is not empowered to conduct a hearing as to truth or falsity of the allegations.

*Sufficiency of circulators' affidavit.*

Sec. 9.10 (2) (a), Stats., provides that:

". . . The preparation and form of the recall petition shall be governed by s. 8.15. In addition, a recall petition for a city office shall contain a specific statement of good and sufficient reason upon which removal is sought."

Sec. 8.15, Stats., concerns the circulation of nomination papers for the September primary election and sub. (4) (a) thereof provides as follows:

"(4) (a) The affidavit of a qualified elector stating his residence with street and number, if any, shall appear at the bottom of each nomination paper, stating he is personally acquainted with all the signers; he knows they are electors of the ward, aldermanic district, municipality or county, as the nomination papers require; he knows they signed the paper with full knowledge of its content; *he knows their respective residences given;* he knows each signer signed on the date stated opposite his name; and, that he, the affiant, resides within the district which the candidate named therein will represent, if elected, and that he intends to support the candidate. The affidavit may be made by the candidate or any qualified elector." (Emphasis supplied.)

The affidavits of the circulators in the instant case averred, ". . . knows of their respective residents given

. . ." The statute provides, ". . . knows their respective residences given; . . ." The appellant urges that the affidavit did not comply with the statutory provisions and is, therefore, fatally defective. We do not agree. The intent of the affiants is clear.

Title II of the statutes concerns elections and sec. 5.01, Stats., provides as follows:

"**Scope.** (1) CONSTRUCTION OF TITLE II. Title II shall give effect to the will of the electors, if that can be ascertained from the proceedings, notwithstanding informality or failure to fully comply with some of its provisions."

Nonetheless, it is clear from *State ex rel. Baxter v. Beckley* (1927), 192 Wis. 367, 370, 212 N. W. 792, that petitions for recall of municipal officials will receive close judicial scrutiny for procedural regularity as evidenced by the following language:

"While, as appellant stresses, by sub. (6), sec. 5.01, Stats., the legislative purpose is declared to be that the provisions of the election laws shall be construed so as to give effect to the will of the electors if that can be ascertained from the proceedings notwithstanding informality or failure to comply with some of its provisions, yet we are dealing here with a special election matter in which the rights of one theretofore duly elected to public office as well as the rights of the general public are concerned. Nor are we at liberty to disregard positive language of the statute as to what shall appear on the face of such a petition before the machinery to provide for a special recall election shall be set in motion."

It is generally recognized in 4 McQuillin, *Municipal Corporations* (1968 rev. 3d ed.), pp. 313, 314, secs. 12.251a and 12.251b, as follows:

"There must be substantial compliance with legally required recall procedures. But substantial compliance is all that is necessary. Nevertheless, it has been ruled that noncompliance with a statutory provision intended to safeguard the operation of constitutional recall procedures is fatal to the validity of a recall petition.

"Sec. 12.251b.—**Petition.**

"What a recall petition must contain, and the method of the determination of its sufficiency is to be tested, of course, by the meaning of the applicable local law, and such local laws vary in many respects. The petition should be liberally construed. . . ."

It is also recognized in 62 C. J. S., *Municipal Corporations,* pp. 958, 959, sec. 516:

". . . A statute providing for recall should be liberally construed with a view to promote the purpose for which it was enacted . . . ."

Under the facts of this case, we do not place any significance on the fact that the affidavit of the circulator used the word "residents" instead of the word "residences," as used in the statute. The language of the affidavit contains a positive statement that the circulator knew each of the signers of the petition and that they were electors of the city of Montreal. We hold that there is no material significant defect in the petitions and that there has been substantial compliance with the statute.

*By the Court.*—Order affirmed.